Sherman JONES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 91–SC–316–MR.

Supreme Court of Kentucky.

June 25, 1992.

As Amended Aug. 31, 1992.

William Yesowitch, Louisville, for appellant.

Chris Gorman, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Frankfort, for appellee.

### OPINION OF THE COURT.

Appellant, Sherman Jones, was convicted by a jury in Lincoln Circuit Court of first degree rape and first degree sodomy of his three-year old daughter. The jury recommended two twenty-year sentences to be served concurrently. At final judgment, the trial judge imposed two twenty-year terms to be served consecutively.

Appellant appeals his conviction to this Court as a matter of right. We affirm.

The victim in this case is the natural child of Rita and Sherman Jones. Shortly after the victim's birth, Rita and Sherman Jones divorced with the father obtaining custody.

Sherman Jones, the appellant, remarried and continued to retain custody. When this marriage dissolved, the victim was placed under the care of her maternal aunt, Rhonda Dowell, because appellant's job as a truck driver necessitated absences from his daughter.

The victim's mother, Rita Johnson, was married three times, in close succession, prior to, and immediately following, the child's birth. Though still married to Anthony Johnson, her third husband, she traveled with the appellant to Canada three days prior to his visit at the Dowell's residence on March 24–25, 1990.

The instances of sexual abuse allegedly occurred on March 25, 1990. Appellant arrived at the Dowell's residence to visit his daughter late in the evening on March 24, 1990, in the company of Rita Johnson. After appellant and Ms. Johnson arrived at the Dowell's, they apparently slept in the cab of his truck. Earlier, at 6 p.m. that same evening, Rhonda Dowell bathed the victim and noticed nothing unnatural about the child.

The following morning, on March 25, 1990, around 10 a.m., Rhonda Dowell and her sister, Rita Johnson, left the victim for several hours with appellant and Rhonda's husband, Tim, the victim's uncle. Since appellant's truck was parked in a visible location, ten to fifteen feet away from the garage where Tim Dowell worked that morning, Mr. Dowell could observe that appellant and the victim spent between thirty minutes to an hour together in the vehicle.

Later that morning, upon returning from her excursion, Rhonda Dowell took the victim to a relative's house to give her a bath, and discovered that the girl's genital and anal areas were severely reddened. Responding to query from her aunt the victim responded that, "Sherm played with my butt."

Later that evening, Rhonda Dowell testified that she took the victim to the emergency room of a hospital where Dr. Thompson, in an examination, found the victim's genital and anal areas discolored, and both her vaginal and anal openings dilated. During this examination, a swab taken from the victim's anal region, resulted in a positive test for chlamydia, a sexually transmitted disease. Appellant was never similarly tested.

Subsequent to Dr. Thompson's physical exam, the family physician, Dr. Miller, on April 4, 1990, provided follow-up treatment concerning the victim's chlamydia infection. During this visit, Dr. Miller, like Dr. Thompson, found the victim's labia reddened, and her vaginal and anal openings dilated.

A social worker with the Department for Human Resources and Child Protective Services testified that an earlier investigation in February of 1990, in response to a complaint of alleged abuse of the victim, produced no physical evidence, neither did the child communicate about the alleged abuse during a session with the social worker, using anatomically correct dolls. The social worker further testified that during a session with the child, one day following the alleged instances of abuse on March 25, 1990, the child again failed to exhibit indications of abuse, when playing with anatomically correct dolls.

The victim, four years old at the time of the trial, never testified in court, though a February, 1991, court order determined, following a hearing, that she was competent to appear as a witness.

■ Appellant's first claim of error is without merit. He contends that the trial court denied his right to develop an effective defense when it sustained the Commonwealth's objections to his cross-examination of Rhonda Dowell. Appellant asserts that Ms. Dowell could have testified about the "reputed" bad acts and reputation of Anthony Johnson, with whom the victim had been in company with her natural mother and aunt, approximately three months before the instances of sexual abuse in question. Appellant claims this testimony would have provided material evidence with which the jurors could determine his guilt or innocence.

Appellant failed to request an avowal in order to place Ms. Dowell's testimony in the record for appeal purposes. RCr 9.52. According to *Baker v. Commonwealth,* Ky., 482 S.W.2d 766, 769 (1972):

"... error cannot be predicated on rejection of evidence when no avowal is made which would disclose what answer would be given if the witness or witnesses were permitted to testify."

Appellant's first contention of error thus cannot be made a basis for reversal.

Appellant next argues, that the case should be reversed and remanded to the trial court to determine whether testimony by Dr. Thompson, who appellant alleges

was an examining doctor, was sufficiently reliable as to warrant its admission, according to strictures enunciated in *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380 (1990). In that opinion this Court adopted Fed.R.Evid. 803(4), and eliminated the distinction between treating and testifying physicians, as the sole criteria to determine the admissibility of statements made to them by their patients. Appellant argues that *Drumm, supra,* imposed the requirement that the trial court must hold a prior hearing to determine whether or not the said statements are reliable as evidence.

■ *Drumm, supra,* does not require a preliminary hearing by the trial court to determine the admissibility of statements made by an alleged sexual abuse victim to a physician. All that *Drumm, supra,* contemplates, is that a party offering such evidence lay sufficient foundation to show the relevance and reliability of the hearsay statements made by the victim, i.e., that circumstances surrounding the way the physician obtained these statements evinces their trustworthiness. *Hellstrom v. Commonwealth,* Ky., 825 S.W.2d 612 (1992).

■ The statements in question fall within these parameters. The child was taken by her aunt to an emergency room of a hospital where a presumably unknown physician, Dr. Thompson, provided the child necessary medical intervention as the result of physical signs of abuse, whatever their origin. Circumstances surrounding these statements thus are well within the purview of *Drumm, supra,* for they were made in order for the child to receive medical treatment. The trial court thus did not err in admitting this evidence.

Appellant's third claim of error argues that a directed verdict on the first degree rape charge should have been granted at the close of the Commonwealth's case because no evidence was presented to show that actual penile penetration of the vagina occurred. KRS 510.010(8).

■ "The fact of penetration may be proved by the circumstances." *Causey v.*

*Commonwealth,* Ky., 550 S.W.2d 494 (1977). Evidence pertinent to this issue, presented at trial, included the following: (1) both Dr. Thompson and Dr. Miller found the victim's labia severely reddened and her vaginal opening dilated, (2) the aunt, Ms. Dowell, stated that she discovered discoloration of the victim's vaginal area when bathing the child, shortly after the victim had been left in appellant's exclusive company in his truck for between thirty minutes to an hour, and (3) Dr. Thompson testified that the victim indicated that appellant had played with her groin area, that appellant asked her to take off her clothes, and that appellant made her play with his "frog."

■ Drawing all fair and reasonable inferences in favor of the Commonwealth, evidence presented at trial was sufficient for a reasonable juror to believe beyond a reasonable doubt that appellant is guilty. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991). Denial of appellant's motion for a directed verdict thus was proper. The victim's statements to her aunt and Dr. Thompson, when considered in the light of medical evidence revealing discoloration and dilation of her genital area, combine to create a submissible issue on the question of penetration under *Paenitz v. Commonwealth,* Ky., 820 S.W.2d 480 (1991); and *Causey, supra.*

Appellant's final assignment of error is equally without merit. In it, appellant requests this Court to reevaluate its holding in *Dotson v. Commonwealth,* Ky., 740 S.W.2d 930 (1987), and find the sentencing procedure in KRS 532.110(1) as untenable. In *Dotson, supra,* we held that imposition of concurrent or consecutive sentences is in the discretion of the trial judge, even though the jury initially may have recommended a different sentence. Appellant argues this practice, pursuant to KRS 532.-110(1), creates a strong probability that jurors will not understand the full import of their decision when imposing a "recommended sentence."

■ The judge in this case imposed a sentence of two twenty-year terms to be served consecutively, whereas the jury recommended that the two twenty-year terms be served concurrently. According to KRS 532.110(1) and *Dotson, supra,* no error was involved for the trial judge has wide discretion when imposing sentencing. This issue thus provides no basis for reversal of appellant's convictions.

Therefore, because we find that the trial court did not err, the judgment of appellant's convictions for first degree rape and first degree sodomy is affirmed.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LAMBERT and LEIBSON, JJ., dissent on *Dotson* issue.

COMBS, J., dissents without a separate dissenting opinion.