# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JANUARY 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0433-MR

ADRIAN DEAN HORD                                            APPELLANT

|   |   |   |
|---|---|---|
| V. | ON APPEAL FROM LEWIS CIRCUIT COURT<br>HONORABLE BRIAN C. MCCLOUD, JUDGE<br>NO. 20-CR-00011 |   |

COMMONWEALTH OF KENTUCKY                          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

Adrian Hord appeals as a matter of right[1] from his seventy-year sentence of imprisonment after being found guilty of four counts of first-degree wanton endangerment, three counts of first-degree assault, three counts of first-degree burglary, two counts of second-degree assault, one count of first-degree criminal abuse, one count of tampering with physical evidence, two counts of possession of a firearm by a convicted felon and being a first-degree persistent felony offender ("PFO"). On appeal, Hord alleges the Lewis Circuit Court abused its discretion by sentencing him to the jury's initial sentencing recommendation of eighty years instead of the twenty-year concurrent sentence

---

[1] KY. CONST. § 110(2)(b).

the jury recommended in the PFO sentencing phase. Based on our review of the record and applicable law, we conclude the trial court acted within its discretion to impose the jury's original recommendation of eighty-years' imprisonment, capped at seventy years by statute. Accordingly, we uphold the final judgment.

## I. Background

On February 7, 2020, Hord assaulted his mother, Jerri, and his girlfriend, L.C.; broke into his neighbors' houses and assaulted them; then barricaded himself in Jerri's garage and fired shots at police officers during a two-hour standoff. This chain of events began when Hord and L.C. had an argument, leading Hord to take their two-year-old child to Jerri's house down the street. Hord took the child into Jerri's detached garage and after a while, Jerri became concerned about the child and went to check on her. Hord would not let her enter the garage, so Jerri called L.C. for help. When L.C. arrived, Hord had locked the garage door. Jerri unlocked it with a key and she and L.C. entered. As L.C. spoke with Hord, Jerri approached the child but was shoved to the ground by Hord, who kicked her twice in the mouth, breaking her jaw. Jerri was undergoing chemotherapy treatment at the time and was frail.

Jerri crawled out the door and sought help at her neighbor's house, the Johnsons. L.C. followed with the child. Hord retrieved a long gun, then broke down the Johnsons' door, and went from room to room searching for L.C. and the child. He hit both residents over the head with the butt of the gun and

2

threatened that he would kill them if they did not tell him where L.C. and the child were. He also assaulted the Johnsons' niece.

Hord found Jerri hiding in the bedroom, hit her on top of the head with the gun, and kicked her. When Hord went to another room, Jerri escaped to another neighbor's house, the Sapps. L.C. hid in the Johnsons' closet with the child and called 911. Hord left the Johnsons, retrieved another gun, and followed Jerri to the Sapp residence, busting down their door as well. Hord held a gun to Mrs. Sapp's head and then her son's head until they told him that his daughter was not there.

Meanwhile, when L.C. heard Hord leave the Johnsons, she exited the closet with her child and stepped out of the house. Hord caught up with her and struck her multiple times in the head with the butt of a shotgun. L.C. fell to the ground and covered the child with her body to protect her. Hord began strangling L.C. and threatened to kill her. When L.C. told him the police had arrived, Hord fled back to the garage, and barricaded himself inside. Police officers tried to make contact with Hord, who briefly stepped outside the garage, brandished a long gun and pointed it at the officers. When an officer fired at him, he retreated inside the garage. Hord then fired multiple shots through the garage door toward the police officers. After two hours of negotiation, Hord finally exited the garage and was placed under arrest.

At trial, a Lewis County jury convicted Hord of four counts of first-degree wanton endangerment, three counts of first-degree assault, three counts of first-degree burglary, two counts of second-degree assault, one count of first-

3

degree criminal abuse, one count of tampering with physical evidence, and two counts of possession of a firearm by a convicted felon. After the initial sentencing phase, the jury recommended the minimum on each count, to run consecutively for a total of eighty years. During the PFO sentencing phase, the jury found Hord to be guilty of first-degree PFO and again recommended the minimum on each count,[2] but to run concurrently, for a total of twenty years. Obviously confused, the trial court polled the jury, asking if it was its intent to lessen Hord's sentence from eighty years to twenty after finding he was a PFO. The jury affirmed its verdict.

At the formal sentencing, Hord asked the trial court to follow the PFO-sentencing recommendation of twenty years. The Commonwealth asked the trial court to sentence Hord under the PFO instructions, but to run the sentences consecutively. [3]In the alternative, the Commonwealth suggested the PFO charge be dismissed, and the trial court follow the jury's original sentencing recommendation of eighty years.

The trial court indicated its belief that the jury was confused and stated that justice required dismissing the PFO and sentencing Hord based on the

---

[2] To be clear, the jury was properly instructed on each conviction as to the range of penalty for both the unenhanced penalty and the PFO enhanced penalty. The jury in each instance recommended an appropriate penalty within the permitted range. For example, on each Wanton Endangerment First Degree conviction, the jury recommended a sentence of one year, but PFO-enhanced sentence of 10 years. For each of the Class B Felonies, Assault First Degree and Burglary First Degree, the jury recommended a sentence of 10 years, but PFO-enhanced sentence of 20 years. The PFO-enhanced sentences totaled 220 years.

[3] We interpret the Commonwealth's suggestion to dismiss the PFO charge as a motion to dismiss which the trial court subsequently granted.

4

jury's initial recommendation. The court dismissed the PFO charge, as well as two counts of possession of a firearm by a convicted felon, both without prejudice, and sentenced Hord to eighty years, subject to the seventy-year statutory cap.[4] Hord now appeals.

## II. Analysis

Whether to impose concurrent or consecutive sentences "is in the discretion of the trial judge, even though the jury initially may have recommended a different sentence." *Jones v. Commonwealth*, 833 S.W.2d 839, 842 (Ky. 1992). On appeal, we will only reverse only if an abuse of discretion is evident; that is, if the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principle." *Lopez v. Commonwealth*, 459 S.W.3d 867, 873 (Ky. 2015) (quoting *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007)).

Hord now asserts that under the PFO sentencing statute, KRS[5] 532.080, the jury's PFO sentence replaced its original penalty phase sentence; the statute granting trial courts sentencing discretion, KRS 532.110, is ambiguous; and the rule of lenity requires a twenty-year sentence. In the alternative, Hord asks for a new penalty phase.

The PFO sentencing statute, KRS 532.080(1), provides in relevant part as follows: "When a defendant is found to be a persistent felony offender, the jury,

---

[4] The trial court also sentenced Hord to an additional six months for contempt for his disrespectful, profanity-laden outburst toward the judge as Hord left the courtroom following sentencing.

[5] Kentucky Revised Statutes.

*in lieu of* the sentence of imprisonment assessed under KRS 532.060 for the crime of which such person presently stands convicted, shall fix a sentence of imprisonment as authorized by subsection (5) or (6) of this section." (emphasis added). Hord maintains that the "in lieu of" language requires replacing the jury's original sentencing recommendation of eighty years with its PFO sentence of twenty years. Hord's argument misses the mark since the jury's PFO recommended sentences all exceeded its nonenhanced sentences with those PFO-enhanced sentences totaling 220 years. The record reflects that the jury's recommendation of 20 years was merely its recommendation as to whether the sentences should run concurrently or consecutively.

KRS 532.110(1) states, subject to limited exceptions: "When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively *as the court shall determine at the time of sentence*[.]" (emphasis added).

In *Benet v. Commonwealth*, 253 S.W.3d 528, 535 (Ky. 2008), this Court noted that it has "repeatedly affirmed a trial court's decision to order a defendant to serve consecutive terms of incarceration in the face of a jury's recommended concurrent sentencing." (citing *Wombles v. Commonwealth*, 831 S.W.2d 172, 176 (Ky. 1992) (affirming trial court's decision to run some convictions consecutively for total term of imprisonment of forty years when jury had recommended all convictions be served concurrently for total term of

6

imprisonment of twenty years); *Murphy v. Commonwealth*, 50 S.W.3d 173, 178 (Ky. 2001) (affirming trial court's decision to sentence defendants to consecutive terms of imprisonment totaling twenty-five years when jury had recommended concurrent terms of imprisonment totaling ten years); *Nichols v. Commonwealth*, 839 S.W.2d 263, 264-65 (Ky. 1992) (affirming trial court's decision to impose consecutive terms of imprisonment totaling ten years despite jury's recommended concurrent sentences totaling five years' imprisonment); *Jones v. Commonwealth*, 833 S.W.2d 839, 842 (Ky. 1992) (affirming trial court's decision to impose two consecutive twenty-year imprisonment terms when jury recommended two concurrent twenty-year terms)).

The *Benet* court emphasized,

> [This Court] refuse[s] to require the trial judges of this state to be compelled invariably to follow a jury's recommendation regarding whether multiple sentences to be served concurrently or consecutively. Rather, the trial judges of the Commonwealth should sentence all defendants facing multiple terms of incarceration as a trial judge believes in the exercise of discretion is a proper sentence, even if that proper sentence deviates from a jury's recommendation. Of course, it is beyond cavil that trial judges may not increase the sentence actually determined by the jury; but trial judges are not bound by the jury's recommendation of how that sentence shall be served.

253 S.W.3d at 535-36.

More recently, in *Howard v. Commonwealth*, this Court reaffirmed that "Kentucky statutory law affords trial courts immense discretion in setting criminal penalties." 496 S.W.3d 471, 475 (Ky. 2016) (citing KRS Chapter 532). Along these lines, "trial courts retain discretion in decreasing unduly harsh

7

sentences, in granting or denying probation, and in determining whether a defendant should serve sentences concurrently or consecutively." *Id.* (citations omitted).

Here, after dismissing the PFO charge, the trial court exercised its discretion to run the previously recommended (unenhanced minimum sentences) for each count consecutively. This decision was made after the court heard arguments from both parties and considered the PSI report, the nature of the offenses and Hord's criminal history. The rule of lenity under which Hord now seeks relief "requires any ambiguity in a statute to be resolved in favor of a criminal defendant." *White v. Commonwealth*, 178 S.W.3d 470, 484 (Ky. 2005). However, since KRS 532.110 and case law are clear about the trial court's authority and discretion in sentencing a criminal defendant, the rule of lenity does not apply. Lastly, Hord's claim that the jury exercised its prerogative to fix the PFO sentence to be lower than the original sentence has no bearing on whether the trial court properly exercised its discretion to impose the jury's original recommended sentence. Hord has failed to show the trial court's imposition of a seventy-year sentence was an abuse of discretion, thus, a new penalty phase is not warranted.

### III.    Conclusion

For the foregoing reasons, the final judgment of the Lewis Circuit Court is affirmed.

VanMeter, C.J.; Bisig, Keller, Lambert, Nickell, and Thompson, JJ., sitting. VanMeter, C.J.; Bisig, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only. Conley, J., not sitting.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang

Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman

Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General