RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0943-MR

WILLIAM E. MASON                                                      APPELLANT

v.                    APPEAL FROM JEFFERSON CIRCUIT COURT
                      HONORABLE MARY M. SHAW, JUDGE
                      ACTION NO. 16-CR-001814

COMMONWEALTH OF KENTUCKY                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND TAYLOR, JUDGES.

TAYLOR, JUDGE: William E. Mason brings this appeal from a July 14, 2022,

Opinion and Order of the Jefferson Circuit Court, Division Five, denying his

Kentucky Rules of Criminal Procedure (RCr) 11.42 motion without an evidentiary

hearing. We affirm.

Following a jury trial, Mason was adjudicated guilty of two counts of

murder, possession of a handgun by a convicted felon, tampering with physical

evidence, and with being a first-degree persistent felony offender. Mason was

sentenced to life imprisonment. Mason pursued a direct appeal to the Kentucky

Supreme Court, and by Opinion rendered November 1, 2018, the Supreme Court

affirmed Mason's conviction (*Mason v. Commonwealth*, 559 S.W.3d 337 (Ky.

2018)).

>The Supreme Court summarized the underlying facts as follows:
>
>>Investigators found the lifeless bodies of three men, Larry Thomas, John Bailey, and Michael Bass, at the residence of Everett Todd. The bodies of Thomas and Bailey were found in Todd's living room, and Bass's body was found in the bedroom. All three men had been shot in the head, and their bodies had been rolled in pieces of carpet cut from the floor. Todd first informed law enforcement thirteen hours after the men had died. Todd told the police that he knew nothing about the killings because he had spent the night at a friend's house, discovering the bodies upon returning home in the morning. Authorities questioned three individuals, Todd, Christopher Giddens, and Mason, as part of the investigation of these apparent crimes.
>
>>During questioning, Todd retracted his earlier denial and revealed that, in fact, he knew about the murders occurring in his home. Todd stated that Mason murdered the three men and Giddens helped, reluctantly, by cutting the carpet to wrap the bodies. Specifically, Todd stated that he arrived home at about 3 a.m. the day of the murders to pick up some clothes for an overnight stay with his girlfriend when he encountered Mason relaxing in the kitchen and living room with Bailey and Thomas. A moment later, Giddens came through the back door, and, at almost that very instant, Todd heard "a shot discharge" and saw Mason shooting Bailey in the head. Mason then killed Thomas and asked where Bass

was. Mason then went into the bedroom, after which Todd heard a gunshot and the sound of Bass falling to the floor. Todd spent a few moments inside the house, mopping up some blood and cutting a strip of carpet. Todd, Giddens, and Mason then went to Giddens's mother's house to discuss what to do next. Todd eventually left for his girlfriend's house, where he spent a few hours sitting in his car. He then returned to his own home, looked briefly inside, and left again to go to his cousin's house. He slept there for a few hours before calling police.

Giddens also stated that Mason killed the three men and admitted to assisting in the manipulation of the crime scene after the shootings. Specifically, Giddens stated that he arrived at Todd's house to find Mason, Bailey, and Thomas conversing. Moments after arriving at the house, Mason shot Bailey and Thomas. Giddens, Todd, and Mason then left the house and went to Giddens's mother's home, where they sat for a few minutes on the front porch before deciding to return to Todd's house to "fix" the scene. Giddens stated that it was during this return trip that he first saw Bass's body, finding it on the floor of a nearby bedroom. Giddens took a box cutter and cut some carpet from the floor, giving up after a few minutes and leaving the house.

After two weeks of trial and more than eleven hours of deliberation, the jury convicted Mason of the murder of Thomas and Bailey but not Bass. . . .

*Mason*, 559 S.W.3d at 338-39. The Supreme Court found no reversible error and affirmed the judgment of the trial court.

On January 30, 2020, Mason filed a motion for post-conviction relief pursuant to RCr 11.42 in the circuit court. Therein, Mason asserted that trial counsel rendered ineffective assistance in several instances. The trial court denied

Mason's RCr 11.42 motion without an evidentiary hearing by order entered July 14, 2022. This appeal follows.

When reviewing the denial of an RCr 11.42 motion without an evidentiary hearing, we must determine whether movant's allegations are refuted upon the face of the record. *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001). An evidentiary hearing is not required where the record refutes the claim of error, or "where the allegations, even if true, would not be sufficient to invalidate the conviction." *Harper v. Commonwealth*, 978 S.W.2d 311, 314 (Ky. 1998).

In Kentucky, ineffective assistance of counsel claims are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and recognized by the Kentucky Supreme Court as controlling precedent in *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985). To prevail upon an RCr 11.42 motion, a movant must demonstrate: (1) trial counsel's performance was deficient, and (2) the deficiency was prejudicial and deprived defendant of a fair trial. *Strickland*, 466 U.S. at 687. And, an appellant bears a heavy burden of identifying the specific acts or omissions that constitute counsel's deficient performance. *Commonwealth v. Pelfrey*, 998 S.W.2d 460, 463 (Ky. 1999).

Mason contends that the trial court committed reversible error by denying his RCr 11.42 motion to vacate his sentence of imprisonment without an evidentiary hearing. For his first argument, Mason contends trial counsel rendered

-4-

ineffective assistance by opening the door to evidence that Everett Todd had taken a polygraph test and was not thereafter charged with a crime. In support of his argument, Mason asserts it was improper for trial counsel to question Todd about the polygraph test and to allow Todd "to insinuate to the jury that her [sic] performed favorably on the examination." Mason's Brief at 14.

In rebuttal to trial counsel's examination of Todd, the trial court permitted the Commonwealth to call the polygraph examiner as a witness. The polygraph examiner essentially testified that the test was inconclusive because Todd fell asleep during the test. On direct appeal, the Supreme Court held that it was proper to allow the Commonwealth to rebut the testimony after the door had been opened by Mason's counsel. But, more importantly, the Supreme Court noted that it failed to see how the testimony of the polygraph examiner prejudiced Mason in any way. We agree and conclude that Mason has failed to demonstrate that he was prejudiced by counsel opening the door to permit the Commonwealth to call the polygraph examiner as a witness. As the polygraph examiner ultimately testified that the test was inconclusive because Todd fell asleep, we do not believe Mason was prejudiced. The second prong of *Strickland*, which requires that any deficiency must have been prejudicial, was not satisfied; thus, the trial court properly denied Mason's RCr 11.42 motion as to the polygraph issue. *See Strickland*, 466 U.S. at 687.

Mason asserts that trial counsel was ineffective for failing to prepare for trial. More particularly, Mason complains that trial counsel failed to timely obtain before trial, the police interview of Todd, as well as, the police interviews of three other witnesses, and certain photographs.

During discovery, the Commonwealth supplied trial counsel with four discs containing the police interview of Todd. Trial counsel was unable to view one of the four discs as the disc was corrupt. On the first day of trial, the trial court addressed some housekeeping matters before empaneling the jury. Trial counsel advised the court that he had been unable to view one of the discs containing part of Todd's police interview. Trial counsel requested and was granted a continuance to review the one disc that he had been unable to view. After the continuance, trial counsel cross-examined Todd for almost an hour regarding details of the police interview and even asserted a theory wherein Todd was the perpetrator of the murders. It is also worth noting that Todd was not the only witness to the murders. Mason's cousin, Christopher Giddens, also witnessed the murders. During Giddens' police interview, which was played at trial, Giddens stated that Mason committed the murders. Considering the evidence as a whole, we do not believe that Mason has demonstrated that he was prejudiced by the delay in trial counsel receiving and reviewing the one previously corrupt disc of Todd's police

interview. *See Strickland*, 466 U.S. at 687.[1] Thus, the trial court did not err in denying Mason's RCr 11.42 request for relief.

For his third argument, Mason next asserts that trial counsel failed to present Mason's alibi defense at trial. Mason specifically contends that "William Mason, Brittney Calloway, Mr. Todd's girlfriend, and various neighbors" could have testified that Mason was not home when the gunshots were fired. Mason's Brief at 18.

It must be recognized that Mason failed to identify Todd's girlfriend and the neighbors by name. Furthermore, Mason did not provide any specific facts regarding how any of these witnesses could have provided him an alibi. Most notably, Mason failed to specify the testimony of these individuals concerning his alleged alibi. Therefore, we believe Mason did not meet the burden of identifying the specific acts or omissions that constitute counsel's deficient performance. *See Pelfrey*, 998 S.W.2d at 463. Thus, the trial court properly determined trial counsel was not deficient as to Mason's alibi claim.

Finally, Mason contends that trial counsel was deficient for failing to request that the jury be sequestered during the trial. More particularly, Mason asserts that after a day of deliberations, the jurors had decided to acquit Mason of

---

[1] As we concluded there was no error as to the police interview of Everett Todd, there can be no cumulative error as to the police interview of the other three witnesses or the photographs.

the Bass murder and were considering acquitting Mason of the murders of Thomas and Bailey. Mason asserts that if the jury had been sequestered "the trial would have resulted in a hung jury or an acquittal of [Mason] on all counts." Mason's Brief at 20. However, Mason has failed to present any proof that the jury was heavily in favor of acquitting him of the murders of Thomas and Bailey during their deliberations.

The record does reveal that during deliberations, the jury informed the court they could not reach a unanimous verdict. The court then read the *Allen* charge and sent the jurors back to further deliberate. *See Allen v. United States*, 164 U.S. 492, 501 (1896). During a bench conference, Mason's trial counsel requested that the jury be allowed to deliberate for thirty more minutes and then conclude for the day. After thirty minutes, the trial court dismissed the jury to return the next morning. Upon the jury's return the following morning, the jury requested the videos of the police interviews of Todd, the police interview of Giddens, and the cross-examination of Todd by Mason's trial counsel. A few hours after receiving those items, the jury reached a verdict. The jury convicted Mason of the murder of Thomas and Bailey but acquitted him of the murder of Bass. The jury reached this verdict after reviewing several items of evidence. As Mason's claim that he would have been acquitted if the jury had been sequestered

is merely speculative, we believe Mason has failed to meet his burden of proving this claim. *See Bartley v. Commonwealth*, 400 S.W.3d 714, 719 (Ky. 2013).

We view any remaining contentions of error to be moot or without merit. In sum, we believe the trial court did not err by denying Mason's RCr 11.42 motions without an evidentiary hearing.

For the foregoing reasons, the Opinion and Order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Michael L. Goodwin
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky